## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| REBECCA HILL | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.     2:21-cv-2214 |
| PRESTIGE WORLDWIDE LEGENDS LLC, | ) | JURY TRIAL DEMAND |
| d/b/a NISSAN OF LEGENDS, | ) | |
| a/k/a PRESTIGE NISSAN | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW the plaintiff, by and through undersigned counsel, and for her complaint and causes of action states and alleges as follows:

## PARTIES

1.      Plaintiff Rebecca Hill is a citizen and resident of Kansas City, Wyandotte County, Kansas.

2.      Defendant Prestige Worldwide Legends LLC d/b/a Nissan of Legends a/k/a Prestige Nissan ("**Prestige**") is a Kansas limited liability company, doing business in the State of Kansas at all times relevant to this lawsuit. Prestige may be served with process through its registered agent at the following address: Registered Agents Inc., 4601 E Douglas, Wichita, KS 67218.

3.      At all relevant times, Plaintiff was an "employee" of Prestige as defined in 42 U.S.C. § 12111(4).

4.      At all relevant times, Prestige was an "employer" as defined in 42 U.S.C. § 12111(5).

## JURISDICTION & VENUE

5.      This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1331, in that it arises under the laws of the United States of America, namely, the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) by virtue of the fact that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the State of Kansas and that defendant is registered to do and is doing business in the State of Kansas, subjecting it to personal jurisdiction in this action and making it a "resident" of this judicial district pursuant to 28 U.S.C. § 1391(c).

7.      This Court may exercise supplemental jurisdiction of all related state-law based claims pursuant to 28 U.S.C. § 1367.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**").

9.      The EEOC investigated the charge of discrimination, and retaliation Plaintiff filed, and subsequently mailed its Notice of Right to Sue on February 9, 2021, a true and accurate copy of which is attached hereto as **Exhibit 1**.

10.     Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right To Sue.

11.     All conditions precedent to filing suit have been performed or have occurred.

## FACTUAL ALLEGATIONS

12.     Plaintiff was hired by Prestige on or about November 21, 2018 as a sales consultant.

13.     Plaintiff was terminated by Prestige on October 16, 2019.

14.     Prior to her employment with Prestige, Plaintiff worked in the car industry for eight (8) years.

15.     While employed by Prestige, Plaintiff was one of the top performing sales consultants at times.

16.     During her employment with Prestige, Prestige would award the three window offices at the Kansas City, Kansas location to their top performing sales consultants.

17.     At one point during her employment with Prestige, Prestige provided Plaintiff with one of the aforementioned window offices.

18.     Plaintiff received numerous positive online reviews from Prestige customers during her employment with Prestige.

19.     During the relevant periods herein, Plaintiff suffered from numerous medical conditions, including: cancer (in-and-out of remission), sepsis, thyroid condition, kidney failure, and anxiety.

20.     On July 31, 2019, Plaintiff's doctor requested an accommodation for Plaintiff to work only four (4) to six (6) hours a day through August 12, 2019.

21.     Plaintiff provided Defendant the doctor's note dated July 31, 2019 containing the aforementioned restrictions.

22.     Plaintiff was hospitalized from August 12, 2019 to September 5, 2019 (the "**Hospitalization Period**").

23.     During the Hospitalization Period, Plaintiff continued to perform satisfactory work for Prestige from her hospital bed by performing online sales.

24.     Prestige consented to Plaintiff working from her hospital bed during the Hospitalization Period.

25.     Prestige never relayed any concerns to Plaintiff regarding her productivity while working from her hospital bed during the Hospitalization Period.

26.     Plaintiff regularly contacted her general manager, Matt Stein, regarding sales and leads during the Hospitalization Period.

27.     On August 24, 2019, Plaintiff texted Mr. Stein requesting to see if Prestige would be willing to start a fundraiser to assist Plaintiff with the payment of her medical bills. Mr. Stein responded that he would check with the owner of Prestige, Chris Cashdollar, and "see what we can do."

28.     On August 29, 2019, Plaintiff texted Mr. Stein inquiring whether she would be terminated due to her hospitalization and illness. Mr. Stein responded and assured Plaintiff that she would not be terminated.

29.     Plaintiff then started and posted a fundraiser to help pay for her medical bills on her Facebook account and invited her Facebook Friends to contribute. Some of her Facebook Friends that were invited included a few Prestige co-workers.

30.     Plaintiff shared the fundraiser with Greg Weyrauch, Prestige's Corporate Operations Director.

31.     Mr. Weyrauch donated to the fundraiser, and then shared the fundraiser on his Facebook account.

32.     Several Prestige co-workers also donated to the fundraiser.

33.     On or about September 8, 2019, Plaintiff filed for short-term disability.

34.     On or about September 9, 2019, Plaintiff's primary care physician provided restrictions for Plaintiff that she could return to work on a part-time basis, permitting four (4) to eight (8) hours of work a day, with no prolonged hours, and no frequent walking.

35.     Plaintiff provided the aforementioned restrictions from her primary care physician to Defendant.

36.     On or about September 9, 2019, Prestige indicated on the short-term disability paperwork that Plaintiff's position was sedentary, and that she had returned to work on a part-time basis.

37.     On September 19, 2019, Plaintiff's doctor provided restrictions that Plaintiff could return to work

38.     On September 30, 2019, Plaintiff's doctor provided a note to Plaintiff that she could return to work on September 30, 2019 with her prior restrictions.

39.     Plaintiff provided the aforementioned doctor's note to Defendant.

40.     On September 30, 2019, Plaintiff resumed working in-person for Prestige at the Kansas City, Kansas location.

41.     Even though Plaintiff sold vehicles for Defendant during the month of September 2019, Defendant refused to credit Plaintiff for her sale of vehicles pursuant to her employment with Defendant, thus refusing to pay Plaintiff her commissions earned for the sale of those vehicles.

42.     From October 2, 2019 to October 15, 2019, Plaintiff performed work for Prestige within her restrictions, performing work four (4) to six (6) hours per day, six (6) days a week, and reported almost seventy (70) hours during this period.

43.     On October 16, 2019, Mr. Cashdollar, on behalf of Prestige terminated Plaintiff.

44.     Plaintiff's termination was due to (1) Prestige being unable to accommodate her reasonable work restrictions, (2) that Plaintiff brought animosity to the sales floor by creating and sharing a fundraiser for her medical bills on her Facebook account, and that (3) Mr. Cashdollar

stated that he was trying to "make a strong team" and that he did not believe Plaintiff could be part of a "strong team."

45.     Plaintiff is disabled and/or Defendant regarded her as disabled, as defined by the ADA, at all relevant times herein.

46.     Plaintiff is a member of a protected class because of her disability and/or because she was regarded as being disabled, and because she requested an accommodation.

47.     Specifically, Plaintiff suffers medical conditions which substantially limit her major life activities, including self-care, breathing, working, sleeping, standing, lifting, and walking.

48.     At all relevant times, including prior to Plaintiff's termination, Defendant was aware that Plaintiff had a record of having such impairment.

49.     Throughout her employment with Defendant, Plaintiff notified her supervisors and managers numerous times regarding her personal health and/or disability.

50.     Plaintiff is a qualified individual as defined by the ADA, due to her disability and/or Defendant's perception that Plaintiff is disabled.

51.     Plaintiff could perform the essential functions of her job duties with Defendant with or without reasonable accommodation.

## COUNT I – FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

52.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

53.     Plaintiff requested an accommodation limiting her availability to work to only four (4) to six (6) hours per day.

54.     Defendant denied Plaintiff's requested accommodation, even though it was reasonable.

55.     Defendant has discriminated against Plaintiff on the basis of her disability by failing to accommodate her.

56.     As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits, as well as other monetary and non-monetary benefits.

57.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensatory damages.

58.     Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff under the ADA, meriting an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, pre- and post-judgment interest as permitted by law, and for such further legal and equitable relief as this Court deems just, and proper.

## COUNT II – DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

59.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

60.     Defendant unlawfully and intentionally discriminated against Plaintiff based on her disability and/or because they regarded her as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying her legal rights when they terminated Plaintiff's employment.

61.     Specifically, Defendant's conduct in violation of the ADA included:

a.     requiring overly burdensome and excessive requirements of Plaintiff to prove she suffers from a disability and to what extent;

b.     refusing to credit Plaintiff for her sale of vehicles in the month of September 2019, thus refusing to pay her commissions owed; and

c.     terminating the Plaintiff.

62.     Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

63.     As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits, as well as other monetary and non-monetary benefits.

64.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensatory damages.

65.     Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff under the ADA, meriting an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, pre- and post-judgment interest as permitted by law, and for such further legal and equitable relief as this Court deems just, and proper.

## COUNT III – RETALIATION IN VIOLATION OF THE ADA

66.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

67.     Plaintiff requested reasonable accommodation from Defendant due to her medical condition.

68.     In retaliation for Plaintiff's request for accommodation, Defendant terminated Plaintiff.

69.     In retaliation for Plaintiff's request for accommodation, Defendant refused to credit Plaintiff for her sale of vehicles in the month of September 2019, thus refusing to pay her commissions owed.

70.     As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits, as well as other monetary and non-monetary benefits.

71.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensatory damages.

72.     Defendant's actions were done with malice or reckless indifference to the federally protected rights of Plaintiff under the ADA, meriting an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, pre- and post-judgment interest as permitted by law, and for such further legal and equitable relief as this Court deems just, and proper.

## COUNT IV – VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT

73.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

74.     Plaintiff is a "consumer" as defined in K.S.A. § 59-624.

75.     Defendant is a "supplier" as defined in K.S.A. § 59-624.

76.     Plaintiff purchased a used 2015 Ford Focus from Defendant on May 7, 2019 (the "**Vehicle**") for personal and family use.

77.     The purchase of the Vehicle is a "consumer transaction" as defined in K.S.A. § 59-624.

78.     Mr. Stein informed Plaintiff that the down payment for the Vehicle was $3,500.00, and that Prestige would withhold amounts from Plaintiff's paychecks over time for the down payment.

79.     Plaintiff's paystub for her paycheck dated June 5, 2019 indicates a $1,400.00 deduction from her paycheck which is classified as an "Advance."

80.     Plaintiff's paystub for her paycheck dated July 5, 2019 indicates a $1,000.00 deduction from her paycheck which is classified as an "Advance."

81.     Defendant retained the aforementioned June 5, 2019 and July 5, 2019 Advances, which were applied towards the down payment of the Vehicle.

82.     Mr. Stein presented Plaintiff with a note for the August 5, 2019 paycheck permitting Prestige to withhold $500.00 from that paycheck to go towards the down payment for the Vehicle.

83.     Prestige deducted $500.00 from Plaintiff's August 5, 2019 paycheck which was applied towards the down payment of the Vehicle.

84.     Plaintiff's penultimate paycheck pursuant to her employment with Defendant contained a $1,200.00 "Misc. Deduction" that Prestige applied toward the down payment for the Vehicle.

85.     Plaintiff's final paycheck pursuant to her employment with Defendant contained a $831.96 "Misc. Deduction" that Prestige applied toward the down payment for the Vehicle.

86.     Thus, Plaintiff has paid a total of $4,731.96 for the down payment of the Vehicle.

87.     Defendant provided Plaintiff with an inspection sheet pertaining to the Vehicle's condition prior to purchasing the Vehicle, which indicated that the transmission was inspected.

88.     After purchasing the Vehicle, Plaintiff was provided a different inspection sheet for the Vehicle, which indicated that the transmission was not inspected prior to the sale of the Vehicle to Plaintiff. Further, the new inspection sheet indicated a date of inspection that occurred after Plaintiff purchased the Vehicle.

89.     After Plaintiff purchased the Vehicle, the Vehicle's transmission has failed three (3) separate times. Plaintiff has incurred costs associated with the repair of the Vehicle's transmission.

90.     Defendant's conduct before, during, and after the consumer transaction constituted deceptive acts and practice and/or unconscionable acts and practices, including but not limited to:

   a.   Defendant's willful representation of a falsehood that the down payment for the Vehicle was $3,500.00.

   b.   Defendant's willful representation of a falsehood that the Vehicle's transmission was inspected prior to the sale of the Vehicle.

91.     Defendant's deception and acts were willful, wanton, and done with intent to injure the rights of Plaintiff.

92.     Plaintiff is entitled to damages or a civil penalty for each violation, up to $10,000.00, whichever is greater.

93.     Plaintiff is entitled to reasonable attorney's fees incurred in bringing this cause of action against Defendant.

94.     As a direct result of such representations and conduct, Plaintiff suffered damages including, but not limited to $1,231.96 as the difference between the agreed upon down payment for the Vehicle and the amount Plaintiff actually paid towards the down payment for the Vehicle, temporary loss of use of the Vehicle, costs and expenses associated with the repair of the transmission of the Vehicle, embarrassment, humiliation, frustration, and mental and emotional pain and suffering.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, reasonable attorney's fees and costs incurred herein and for such further legal and equitable relief as this Court deems just, and proper.

## COUNT V – UNPAID WAGES IN VIOLATION OF THE KANSAS WAGE PAYMENT ACT

95.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the aforementioned paragraphs.

96.     At all relevant times herein, Plaintiff was an "employee" of Defendant as defined in K.S.A. § 44-313.

97.     At all relevant times herein, Defendant was an "employer" of Plaintiff as defined in K.S.A. § 44-313.

98.     Plaintiff's penultimate paycheck pursuant to her employment with Defendant, issued October 4, 2019, indicated gross earnings in the amount of $1,750.00 for the pay period of September 16, 2019 to September 30, 2019. Defendant then applied applicable withholdings and

deductions, including a $1,200.00 "Misc. Deduction", reducing Plaintiff's pay for the period to $6.42.

99.     Plaintiff's final paycheck issued pursuant to her employment with Defendant, issued October 18, 2019, indicated gross earnings in the amount of $1,250.00 for the pay period of October 1, 2019 to October 15, 2019. Defendant then applied applicable withholdings and deductions, including a $831.96 "Misc. Deduction", reducing Plaintiff's pay for the period to $0.00.

100.    The deductions from Plaintiff's October 4, 2019 and October 18, 2019 paychecks reduced Plaintiff's wages paid below the minimum wage required under the federal fair labor standards act, 29 U.S.C. § 201 et seq., and the minimum wage required under K.S.A. § 44-1203, in violation of K.S.A. § 44-319(e).

101.    Mr. Stein informed Plaintiff that Prestige would require Plaintiff to execute a new note for each paycheck that would contain a deduction for the down payment for the Vehicle.

102.    Defendant failed to obtain written authorizations from Plaintiff for the deductions in her June 5, 2019 paycheck, July 5, 2019 paycheck, penultimate paycheck, and final paycheck, as required pursuant to K.S.A. § 44-319(b).

103.    More than one pay period has passed since the termination of the employment relationship between Plaintiff and Defendant.

104.    Plaintiff has been damaged by Defendant's willful failure to pay wages due, and by Defendant's aforementioned unauthorized deductions from her June 5, 2019 paycheck, July 5, 2019 paycheck, penultimate paycheck, and final paycheck.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, for a penalty amount as provided under K.S.A. § 44-315(b), for

interest as provided for under K.S.A. § 44-323(a), post judgment interest, and for such further legal and equitable relief as this Court deems just, and proper.

## DEMAND FOR JURY TRIAL AND DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure, and requests that such jury trial take place in Kansas City, Kansas.

Respectfully Submitted by:

**BEAM-WARD, KRUSE, WILSON & FLETES, LLC**

*/s/ Jessica Lile*
RICHARD S. FISK, KS #23712
JESSICA G. LILE, KS #28404
8645 College Boulevard, Suite 250
Overland Park, Kansas 66210
(913) 339-6888 / (913) 339-9653 (Fax)
rfisk@bkwflaw.com
jlile@bkwflaw.com
**ATTORNEYS FOR PLAINTIFF**